ABBY ROGERS CLARK, Appellant, *v.* HIRAM HOWARD et al., Respondents.

1. DEBTOR AND CREDITOR — PROMISE BY TRANSFEREE OF DEBTOR'S PROPERTY TO PAY ANOTHER CREDITOR — ENFORCEMENT OF PROMISE.  If the common debtor of several creditors transfers and delivers all his property to one of them for distribution, and the transferee, by a writing signed by him, promises absolutely to pay another creditor the amount of his debt, in consideration of the transfer by the debtor of all his property to the promisor, such other creditor, although not privy to the contract or consideration, may, if he accepts and adopts the promise on learning of it, maintain an action thereon against the transferee of the property.

2. ABSOLUTE PROMISE TO PAY DEBT OF ANOTHER.  Whether a promise, by a creditor to whom a common debtor has transferred his property, to pay the debt of another creditor is, in fact, an original and absolute promise to pay the debt, or collateral merely, depends upon the intention of the parties, to be ascertained from the language used and from all the surrounding circumstances existing at the time the promise was made, and is not affected by the fact that less was subsequently realized from the property transferred than was expected.

3. AGREEMENT TO "GUARANTEE" PAYMENT OF DEBT OF ANOTHER CONSTRUED TO IMPORT AN ABSOLUTE PROMISE TO PAY.  An agreement in writing, made by one of the creditors of a common debtor in consideration of receiving a transfer of all the debtor's property, to "guarantee" another creditor the payment of the sum of money owing to him from the

debtor, within a certain time, is properly construed to import an absolute promise to pay the debt of such other creditor, when surrounded by circumstances which show that the promisor received the property from the debtor for the purpose and with the expectation of paying therefrom not only his own debt but that of the other creditor.

*Clark* v. *Howard,* 74 Hun, 228, reversed.

(Argued June 2, 1896; decided October 6, 1896.)

APPEAL from order of the General Term of the Supreme Court in the third judicial department, made December 6, 1893, which reversed a judgment in favor of plaintiff entered upon the report of a referee and granted a new trial.

This action was brought to recover $2,800 originally owing by Francis D. Hoyt to the plaintiff, which, she alleged, the defendants by an instrument in writing had agreed to pay.

The facts, so far as material, are stated in the opinion.

*Marcus T. Hun* for appellant. The question whether a contract is original or collateral is not to be determined by the consideration merely of the words used therein. (*Clanrickard* v. *Sidney,* Hobart, 446; *Dixon* v. *Hatfield,* 2 Bing. 439; *Simpson* v. *Penton,* 2 Cromp. & M. 430; *Mountstephen* v. *Lakeman,* L. R. [5 Q. B.] 613; L. R. [7 Q. B.] 196; L. R. [7 Eng. & Ir. App.] 17; *Chase* v. *Day,* 17 Johns. 114; *Dickson* v. *Frazee,* 1 E. D. Smith, 32; *Allen* v. *Scarff,* 1 Hilt. 209; *Post* v. *Geoghegen,* 5 Daly, 216; *F. Nat. Bank* v. *Chalmers,* 144 N. Y. 432; *Leonard* v. *Vredenburgh,* 8 Johns. 29.) The plaintiff is entitled to enforce the agreement between Hoyt and the defendants. (*F. Nat. Bank* v. *Chalmers,* 144 N. Y. 432; *Ackley* v. *Parmenter,* 98 N. Y. 425; *White* v. *Rintoul,* 108 N. Y. 223; *Rothschild* v. *R. G. W. R. Co.,* 84 Hun, 103.) There were no fraudulent representations made by Hoyt that induced the defendants to enter into the agreement. (*Ball* v. *Loomis,* 29 N. Y. 412; *Woodruff* v. *McGrath,* 32 N. Y. 255; *Westerlo* v. *De Witt,* 36 N. Y. 340; *Sinclair* v. *Tallmadge,* 35 Barb. 602; *Russell* v. *Burton,* 66 Barb. 539; *Ellis* v. *Andrews,* 56 N. Y. 83; *Chrysler* v. *Canaday,* 90 N. Y. 273; *Slaughter* v. *Gerson,* 13 Wall. 378; *Farnsworth* v. *Duffner,* 142 U. S. 43; *Clark* v. *Reeder,* 158 U. S. 505.)

*Esek Cowen* for respondents. The plaintiff could not maintain this action against these defendants. She was not a party to the contract, and there was no privity between her and the defendants. The contract being a collateral promise that Hoyt should pay plaintiff within five years, it was for· the benefit of Hoyt and created no obligation to the plaintiff. (Story on Prom. Notes, § 457; Pitman on Prin. & Sureties, 1; *McLaren* v. *Watson's Exrs.*, 26 Wend. 435.) It is claimed by the appellant's counsel that aside from the findings of the referee the evidence in the case can be so interpreted as to support an absolute promise upon the part of the defendants. But if that were true such evidence could not avail the plaintiff upon this appeal, nor does it when properly interpreted support the defendants' position. (*Peck* v. *Goodberlett*, 109 N. Y. 180.) It must be conceded that there was no privity of either contract or· consideration between the plaintiff and defendants. The plaintiff was, in no sense, a party to the contract; no promise was made to her, neither did she part with any consideration, in view of the promise of the defendants, either by releasing Hoyt or otherwise. Unless some settled principle of law permitted her to sue, on the contract of another, she had no cause of action. (*B., E. & C. R. R. Co.* v. *N. Y., L. E. & W. R. R. Co.*, 123 N. Y. 327; *A. Nat. Bank* v. *F. Nat. Bank*, 46 N. Y. 82; *Pardee* v. *Treat*, 82 N. Y. 385.) This action cannot be sustained, because the promise was not for the benefit of the plaintiff but for the benefit of Hoyt. (*Garnsey* v. *Rogers*, 47 N. Y. 233; *Roe* v. *Barker*, 82 N. Y. 431.)

O'BRIEN, J. This case depends upon the construction which should be given to the written contract upon which the plaintiff brought the action and recovered before the referee. The General Term has taken a different view with respect to the meaning and effect of the paper, and reversed the judgment.

There is no dispute with respect to the fact that Francis D. Hoyt was indebted to the plaintiff in the amount of the judgment. The question is whether the defendants have ever

become bound to pay that debt. On the 21st of August, 1886, Hoyt was also indebted to the defendants, composing a mercantile firm engaged in business at Providence and in New York, in the sum of $13,510.89, and on that day he executed and delivered to them a written instrument, reciting the indebtedness and the consideration thereof, and stating that for the purpose of securing and paying this debt Hoyt had on that day sold, assigned and delivered to them all his stock of goods, books, accounts, bills receivable and fixtures in his business in New York, as per bill of sale that day executed and delivered to the defendants. The paper then concluded with the following provision upon which the plaintiff brings this action :

" And whereas, the party of the first party is justly indebted to Mrs. Abby Rogers Clark in the sum of twenty-eight hundred dollars for money loaned, and to Edward W. Davenport in the sum of twenty-five hundred dollars for money loaned.

" Now, in consideration of the premises and the sum of one dollar paid to the party of the first part by the parties of the second part, the parties of the second part hereby agree to guarantee to the said Abby Rogers Clark and Edward W. Davenport the payment to them and each of them of the said sums of money so owing to them as aforesaid within five years from the date hereof, with interest."

The defendants admit the execution and delivery of this agreement, but deny that there was any sufficient consideration therefor, and for a further defense allege that Hoyt falsely and fraudulently represented that the goods so transferred were of sufficient value to pay their debt and also that of the plaintiff and the other party named in the instrument. That in sole reliance upon such representations and statements the defendants accepted the transfer and that such statements were untrue. The referee found that by an inventory and appraisal of the goods so transferred, made by the parties shortly after the transfer, the value thereof appeared to be between fourteen and fifteen thousand dollars ; and after numerous other findings he held as a conclusion of law that

the defendants, under the circumstances of the case, and by the terms of the instrument, promised absolutely to pay the plaintiff's debt within five years. The view of the General Term was substantially that since there was no privity of contract or consideration between the plaintiff and the defendants, the clause of the contract quoted amounted to nothing more than a promise on the part of the defendants to lend to Hoyt the money with which to pay the plaintiff's debt against him, and that the plaintiff was not entitled to sue upon such a promise. It is quite evident from what appears in the record that this point was first suggested on appeal, and that the case was tried upon a different theory. The defendants' understanding and construction of the instrument is thus stated by them in their answer. After stating the fraudulent representations as to the value of the property transferred, made by Hoyt, the answer avers: " That relying solely upon the said representations so as aforesaid made, and believing them to be true, the defendants agreed to accept a transfer of and to take possession of said property, and to dispose of the same to the best advantage, and out of the proceeds to repay the indebtedness of said Hoyt to the defendants and to use any surplus in paying the alleged indebtedness of said Hoyt to the plaintiff and said Davenport." The defendants themselves by their answer have thus given to the contract an interpretation quite different from that now claimed. The issue which was litigated at the trial was substantially one of fact, founded upon the defense of fraud, and which the referee decided adversely to the defendants. In anticipation of this result, apparently, the defendants requested the referee to hold as matter of law that they received the property and its proceeds as trustees for the purpose of disposing of the same and out of the proceeds to pay their own claim and that of the plaintiff and Davenport *pro rata*, and that plaintiff's *pro rata* share of the proceeds with interest, amounting to $2,004.20, was the sum for which the plaintiff was entitled to judgment.

The referee refused so to hold and held as already stated,

that the plaintiff was entitled to recover the whole debt as upon an absolute promise to pay, made by defendants to the plaintiff or for her benefit. At the request of the defendants the referee found as matter of fact that the transfer of the property by Hoyt to the defendants was made for the purpose and with the intent that the same should be sold to the best advantage and the proceeds applied to the payment of the indebtedness of said Hoyt to the defendants and the plaintiff and said Davenport as and in the manner mentioned in said agreement. It is quite apparent from the answer and the whole course of the trial that the theory upon which the defendants succeeded at the General Term was not the theory upon which they rested their defense at the trial. But the defendants were entitled in the court below, and are entitled here, to urge any ground of defense that is fairly presented by the record. It does not follow that because the defendants met with a larger measure of success at the General Term than they even claimed before the referee that they are wrong in the position which they now assume. The legal liability of the defendants for the payment of the plaintiff's debt against Hoyt, upon the facts and circumstances found by the referee, is still open to debate in this court.

The plaintiff was not a party to this agreement and did not even know of its existence until some time after it was made. There was no consideration for the promise moving from the plaintiff to the defendants, and the plaintiff neither waived nor released any right or claim that she had against Hoyt, her original debtor. There is no question in the case with respect to the Statute of Frauds since the defendants' promise, whatever its legal character may be, is in writing signed by the parties to be charged.

The common debtor of the three creditors named in the instrument transferred and delivered all his property to the defendants, and in consideration of such transfer the defendants bound themselves according to the tenor and meaning of the writing. The defendants received all that the debtor had for distribution among his creditors, and in consideration

thereof, among other things, agreed to guarantee to the plaintiff the payment to her within five years of her debt. Whatever the defendants bound themselves to do in this writing was, therefore, as between the parties to it, founded upon a sufficient consideration. If the writing, construed in the light of all the surrounding circumstances, imports a promise on the part of the defendants to pay the plaintiff the amount of her debt against the common debtor, in consideration of the transfer by the latter to the defendants of all his property, the plaintiff may maintain an action on this promise, though she was not privy to the contract or consideration. It is then the case of a promise made by the defendants, upon a valid consideration, to a third person for the plaintiff's benefit. (*Lawrence* v. *Fox*, 20 N. Y. 268; *Burr* v. *Beers*, 24 N. Y. 178.) Where a debtor transfers property to a third person in consideration of his promise to pay the debt to the creditor, the latter may accept and adopt the promise when it becomes known to him and maintain an action upon it. When the promise in such cases is the consideration or condition upon which the third party has received the debtor's property, he thereby makes the debt his own and assumes an independent duty of payment irrespective of the liability of the principal or original debtor. (*F. Nat. Bank* v. *Chalmers*, 144 N. Y. 432; *White* v. *Rintoul*, 108 N. Y. 222; *Townsend* v. *Rackham*, 143 N. Y. 516; *Gifford* v. *Corrigan*, 117 N. Y. 257; *Wager* v. *Link*, 134 N. Y. 122.) It appears that the plaintiff, some time before the commencement of the action, demanded payment of the debt from the defendant, so that there can be no question as to the acceptance or adoption of the promise. It becomes important, therefore, to determine whether the promise contained in the instrument is, in fact, an original and absolute one to pay the debt or collateral merely. That must depend upon the intention of the parties, to be ascertained from the language used and from all the surrounding circumstances. The findings of the referee, when read together and considered in the light of what is to be fairly implied, as well as what is expressed, import that the defendants, by this instrument,

intended to and did promise to pay the plaintiff's debt absolutely. This conclusion is necessarily involved in the findings, if not expressly found in terms, and we may consider all the facts found and the evidence in the record in order to give the decision its proper force and construction. (*Ogden* v. *Alexander*, 140 N. Y. 356.)

The judgment of the referee has been reversed upon the ground that the instrument, when considered with the other facts and circumstances of the case, found or conceded, creates no legal liability against the defendants for which the plaintiff can maintain an action. We are not inclined to agree to this view of the case. The character of the defendants' promise is not to be determined solely with reference to the language employed. Words to the effect that a third party will see the debt paid, or become responsible or the like, have been held to import an original and absolute promise when taken in connection with the facts and circumstances of the transaction. (*Chase* v. *Day*, 17 Johns. 114; *Mountstephen* v. *Lakeman*, L. R. [7 Eng. & Ir. App.] 17.)

It is true that the meaning of such words, whether imputing an original or collateral promise, has been discussed mostly in cases where the Statute of Frauds has been relied upon as a defense ; still the same principle will apply in any case where it is material to determine whether a promise is original or not. If the defendants intended to and did make this debt their own by a promise founded upon a new and original consideration of benefit to the defendants, moving to them from the debtor, the fact that the debt may still subsist against the original debtor is no objection to a recovery. (*Leonard* v. *Vreedenburgh*, 8 Johns. 29 ; *Farley* v. *Cleveland*, 4 Cowen, 432; *Mallory* v. *Gillett*, 21 N. Y. 412.) The true construction of the whole transaction is that the original debtor put a fund or property into the hands of the defendants by absolute transfer upon their promise to pay the plaintiff's debt, with others ; and, although the plaintiff was not a party to the transaction, it was for her benefit, and as the promise is founded upon a new and independent considera-

tion she may enforce it within the doctrine of the cases cited. The facts found or conceded show that such was the transaction, and that the purpose of the paper in question was to assume the payment of the plaintiff's debt in the manner stated therein.

In the first place we have the fact that the defendants executed the paper in the belief that the property transferred to them by the debtor was sufficient to pay their own debt, and also that of the other parties named. This clearly appears from the averments of their answer. It is equally clear that the defendants were informed by the debtor that the plaintiff's debt was one of honor, which he was bound to protect, since it was for money borrowed by him, and that he refused to make the transfer except upon the condition that the defendants should bind themselves to take care of this debt. It appears also that when the property was put into the possession of the defendants they employed the debtor to carry on the business as their agent, furnishing him with other goods, and that the business was so conducted for sometime after the transfer. The defendants, no doubt, believed that if the property transferred should prove in any degree insufficient the balance would be made up from the earnings of the business, and in any event they had five years within which to pay the debt. The language of the instrument, when coupled with the facts and circumstances referred to, does not, we think, give much support to the theory which prevailed in the court below, that the defendants' promise imported nothing more than an agreement on their part with the debtor, and for his benefit alone, to advance to him money with which he might pay the debt in question. We think they virtually assumed it themselves upon the transfer by the debtor of all his property to them. The theory that the defendants' obligation was simply to advance money to Hoyt to enable him to pay the plaintiff's debt is sought to be supported by artificial reasoning and judicial authority, but it is not the natural legal inference to be drawn from the transaction. The cases in which such a principle was sanctioned arose upon facts quite

different from these appearing in this record. (*Garnsey* v. *Rogers*, 47 N. Y. 233.)

There would, no doubt, be great difficulty in holding the defendants liable to the plaintiff if the proposition of their counsel that the promise was collateral, importing nothing more than that Hoyt, the debtor, would pay the debt within five years, could be admitted. Everything in the record tends to show that such was not the intention of the parties to the agreement. Neither Hoyt nor the defendants understood the promise in that way. They expected that the property transferred to the defendants would enable them to pay all the debts referred to, and upon that basis the promise must have been intended to be absolute. To hold that, under the circumstances, the defendants intended nothing more than a collateral guaranty that Hoyt, after being stripped of all he had, would pay the debt within five years, would be to impute to them dishonesty in seeking to retain for themselves the property of their debtor, in excess of their debt. The reasonable and natural conclusion from all the facts is that the defendants intended to pay this debt to the plaintiff out of the property of the debtor which they received and so bound themselves. That was the condition upon which the debtor made the transfer. The nature of the defendants' undertaking is not affected by the fact that less was realized from the property than was expected when the transfer was made. The intention of all the parties to the writing is to be ascertained from the facts existing at the time it was made, or the situation as they then understood it, not by what took place or was disclosed afterwards. If the defendants supposed that they were receiving property from the debtor to pay not only their own debt but also that of the plaintiff and the other creditor named, the conclusion is inevitable that they intended to bind themselves to pay these debts. That they did so understand the situation at the time that they made the promise clearly appears from the record. The fact that in the writing the defendants agreed to *guarantee* the payment to the plaintiff, instead of agreeing to pay,

31

does not control the interpretation of the contract. The intention of the parties and the scope and meaning of the promise is to be ascertained from the nature of the transaction and all the attending facts and circumstances as well as the written words.

Our conclusion is that the promise should be interpreted as an absolute one on the part of the defendants to pay the plaintiff's debt; that it is supported by a sufficient consideration moving from the debtor to them, namely, the transfer of his property for that purpose, and that the legal conclusion of the referee was correct.

It follows that the order and judgment appealed from should be reversed and the judgment entered upon the report of the referee affirmed, with costs in all courts.

All concur.

Ordered accordingly.