ALFRED BRUMME, Respondent, *v.* WILLIAM HEROD, Appellant.

*Contract to pay debts "out of the proceeds of sale" of property conveyed to the promisor — liability of the promisor thereunder — the fact that a creditor holds a mortgage to secure his claim is immaterial.*

One Denike, who was engaged in the erection of fifteen houses, being financially embarrassed, conveyed such houses to William Herod, one of his creditors, who agreed as follows:

"I hereby agree, for and in consideration of one dollar to me in hand paid by Thomas S. Denike, receipt of which is hereby acknowledged, to pay all claims for materials and labor furnished and delivered for the erection of fifteen buildings in course of erection * * * and all notes given to (by) said Thomas Denike out of the proceeds of sale of said fifteen houses and lots, and after paying all indebtedness to said William Herod due from said T. S. Denike, then to divide any surplus between Herod and Denike. In considera-tion of the above the said Denike agrees to deed said fifteen houses and lots to said William Herod, subject to all mortgages and incumbrances and liens, and, paying them, to divide, as above, any balance.

"WILLIAM HEROD,
"THOMAS S. DENIKE."

*Held,* that the contract was not ambiguous; that Herod's liability was limited by the terms of the contract to the payment of the claims for materials and labor

out of the proceeds of the sale, and that his promise was not an original and absolute one to pay all such claims;

That, hence, it was necessary for a person seeking to recover from Herod the value of materials furnished to Denike before the execution of the contract, to allege in his complaint a sale of the property or that the defendant had not used due diligence to dispose of the same.

Semble, that the foreclosure by the materialman of mortgages given to him by Denike as collateral to the debt, and the entry of a judgment for deficiency, did not operate to deprive him of his character of a materialman.

APPEAL by the defendant, William Herod, from an interlocutory judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of Kings on the 28th day of November, 1898, upon the decision of the court, rendered after a trial at the Kings County Special Term, overruling the defendant's demurrer to the complaint.

*Augustus M. Price*, for the appellant.

*John J. Leary*, for the respondent.

WOODWARD, J. :

In the year 1893 Thomas S. Denike was engaged in the erection of fifteen houses. Finding himself in a financially embarrassed situation, he went to the defendant, one of his creditors, and suggested that he take a deed of the premises and complete the buildings, selling them and using the money realized on the sale to pay the bills for materials and labor furnished. The defendant agreed to the proposal, and the deed was executed, transferring the property to the defendant, the following agreement being entered into between the parties :

"BROOKLYN, N. Y., *October 18th*, 1893.

"I hereby agree for and in consideration of one dollar to me in hand paid by Thomas S. Denike, receipt of which is hereby acknowledged, to pay all claims for materials and labor furnished and delivered for the erection of fifteen buildings in course of erection situate on the west side of Troy avenue, between Butler street and Park place, and all notes given to (by) said Thomas Denike, out of the proceeds of sale of said fifteen houses and lots, and after paying all indebtedness to said William Herod due from said T. S. Denike, then to divide any surplus between Herod and Denike. In

consideration of the above the said Denike agrees to deed said fifteen houses and lots to said William Herod, subject to all mortgages and incumbrances and liens and paying them to divide as above, any balance.

"WILLIAM HEROD.

"THOMAS S. DENIKE."

Prior to the making of this contract or agreement the plaintiff alleges that he had supplied certain materials to Denike, and that the latter had executed four certain bonds and mortgages, covering four of the said fifteen houses, to secure the payment of $3,000 then due the plaintiff for such materials. The plaintiff alleges further that he demanded payment of this sum both from Denike and the defendant, and, upon being refused, brought four actions for the purpose of foreclosing the said four mortgages, and that upon a sale had under the foreclosures there was a deficiency of $1,308.10, for which judgment was entered, executions issued against said Denike, and returned unsatisfied, and that the said sum remains unpaid, the said Denike having been insolvent since the transfer of his property to the defendant. Under this state of facts, the plaintiff demands judgment against the defendant for the amount of the deficiency judgment.

It is hardly worth while to seriously consider the proposition that the plaintiff, having elected to foreclose his mortgages, has ceased to be a materialman. The mortgages were given as collateral to the debt, the basis of which was the materials furnished; and the relation is not changed by the action of the plaintiff in seeking to collect his due by means of the foreclosure; some one still owes him for the balance upon the materials furnished.

The second point presents a more serious question. The plaintiff does not allege in his complaint that the defendant has disposed of the property, or that he has realized any money from such sale with which to pay plaintiff's claim, or the claims of the other parties who furnished material or performed labor upon said houses, or that he has not used due diligence to dispose of the same; and it is urged by the defendant that, without such allegations, there is no cause of action set forth in the complaint, because the defendant simply undertook to take the property, complete the buildings and sell the same, paying the claims of the several parties out of the proceeds

of such sales. The learned trial court has taken the view that the contract between Herod and Denike is ambiguous, " made so by the use of the words ' out of the proceeds of sale of said houses and lots,'" and holds that the defendant's promise was and is an original and absolute one " ' to pay all claims for materials.'" In this view of the case we are of opinion that the court is in error, for while it is true that in the case of *Clark* v. *Howard* (150 N. Y. 232, 239) the court say that " The character of the defendants' promise is not to be determined solely with reference to the language employed," there is no rule of law with which we are familiar that permits the court to extend the liability of a promisor beyond the limits fixed by the plain language of the contract. " Words to the effect that a third party will see the debt paid, or become responsible, or the like," continue the court in the case cited, " have been held to import an original and absolute promise when taken in connection with the facts and circumstances of the transaction;" but this falls far short of saying that the defendant shall be liable for more than he has promised to do. In the case at bar, the defendant promised to " pay all claims for materials and labor furnished and delivered for the erection of fifteen buildings in course of erection, * * * and all notes given to (by) said Thomas Denike, out of the proceeds of sale of said fifteen houses and lots, and after paying all indebtedness to said William Herod due from said T. S. Denike, then to divide any surplus between Herod and Denike." Denike, it should be remembered, was financially embarrassed ; he was confronted by a condition in which it was doubtful whether he could complete the buildings and pay the claims for material and work performed. To stop where he was involved a sacrifice of the property to pay accumulated claims, and in this emergency he appealed to Herod, one of his creditors, to take the property and to complete the buildings, selling them for the benefit of his creditors and dividing any surplus which might remain. It is plain that, under the terms of such a contract, the defendant had nothing to gain unless he could sell the property for more than enough to pay the claims against it, and if he did this he would be answerable for the amount of plaintiff's claim. As the defendant could not be benefited by the transfer of the property except as stated above, it is not fair to presume that he

undertook to pay all claims for materials and labor regardless of the amount which he realized upon the sale of the property; and the limit of his liability is fixed by the terms of the contract, which is that he will pay all of these claims out of the proceeds of the sale. There is no fraud alleged, and while the terms of the deed are absolute, the contract under which the deed was delivered reserved to Denike a portion of any surplus which might remain after the payment of all claims against the property, including the mortgages given to the plaintiff. The case is presented in a very different light, therefore, from that of *Clark* v. *Howard* (*supra*), where "The common debtor of the three creditors named in the instrument transferred and delivered all his property to the defendants, and in consideration of such transfer the defendants bound themselves according to the tenor and meaning of the writing. The defendants received all that the debtor had for distribution among his creditors, and, in consideration thereof, among other things, agreed to guarantee to the plaintiff the payment to her within five years of her debt."

It will be observed that the liability of the promisor is to be governed by the writing, not by the character of the transfer; and in this connection it is interesting to follow the language of the court at page 238 : " If the writing, construed in the light of all the surrounding circumstances, imports a promise on the part of the defendants to pay the plaintiff the amount of her debt against the common debtor, in consideration of the transfer by the latter to the defendants of all his property, the plaintiff may maintain an action on this promise, though she was not privy to the contract or consideration." In this case the agreement was not to pay out of the proceeds of the property, but it was recited that " whereas, the party of the first part is justly indebted to Mrs. Abby Rogers Clark in the sum of twenty-eight hundred dollars for money loaned, and to Edward W. Davenport in the sum of twenty-five hundred dollars for money loaned. Now, in consideration of the premises and the sum of one dollar paid to the party of the first part by the parties of the second part, the parties of the second part hereby agree to guarantee to the said Abby Rogers Clark and Edward W. Davenport the payment to them and each of them of the said sums of money so owing to them as aforesaid, within five years from the

date hereof, with interest." The language of the court, when considered in connection with the agreement under review, will be seen to have no bearing upon the question involved in the case at bar where the defendant has, by express language, limited his liability to the payment of all claims out of the proceeds of the property placed in his hands, and has agreed to divide all surplus with the party making the transfer.

There is no liability on the part of the defendant to the plaintiff until he has sold the property, or, through lack of reasonable diligence, has become liable by reason of the neglect of a duty which the law will imply in a case of this character; and it was necessary that these allegations should have been made in the complaint in order that the plaintiff might show to the court that he had a present right to recover from the defendant. (*Tooker* v. *Arnoux*, 76 N. Y. 397, citing *Munger* v. *Shannon*, 61 id. 251, 260.)

In *Belknap* v. *Bender* (75 N. Y. 446, 449) a contract in all essential particulars the same as the one in the case at bar was under consideration in a similar action, and the court say : " Under that agreement, he did not become personally liable to pay the plaintiff; he did not agree to pay plaintiff absolutely, or with his own funds. He did not purchase the stock. He simply agreed to saw the logs, and market the lumber, and apply the net proceeds in payment of the debts specified. He incurred no personal liability for the debts, and was required only to be faithful in the discharge of the trust assumed."

The judgment overruling the demurrer should be reversed, and the demurrer should be sustained, with costs.

All concurred.

Interlocutory judgment reversed, and judgment directed for defendant on demurrer, with costs, with leave to plaintiff to serve amended complaint within twenty days on payment of costs of the demurrer and of this appeal.